IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHELLE WEAVER,                              )
*On behalf of R.F. IV*,                       )
                                              )
                    Plaintiff,                )
                                              )      Civil Action No. 20-1669
        vs.                                   )
                                              )
KILOLO KIJAKAZI,[1]                           )
*Acting Commissioner of Social Security*,     )
                                              )
                    Defendant.                )

ORDER

AND NOW, this 24th day of August 2022, the Court has considered the parties' motions

for summary judgment and will award summary judgment in Defendant's favor.  The agency's

final decision wherein the Administrative Law Judge ("ALJ") denied Plaintiff's application on

behalf of her minor child for supplemental security income ("SSI") under Title XVI of the Social

Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and,

accordingly, will be affirmed.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).[2]

---

[1]     Kilolo Kijakazi is hereby substituted as Defendant pursuant to Federal Rule of Civil
Procedure 25(d).  There is no impact on the case.  42 U.S.C. § 405(g).  The Clerk is directed to
amend the docket to reflect the substitution.

[2]     When this case was previously before the Court, the Honorable Donetta Ambrose ordered
remand on account of the ALJ's failure to consider the effect of structured or supportive settings
on the claimant's limitations.  *Weaver o/b/o R.L.F. v. Saul*, No. CV 18-1550, 2019 WL 5456792,
at *1 (W.D. Pa. Oct. 24, 2019).  Before another ALJ on remand, the claimant was once again
found to be not disabled.  Plaintiff argues that the ALJ failed to fulfill the Court's remand order
and again overlooked the effect of structured settings in school and at home on the claimant's
limitations.  For the reasons explained herein, the Court finds no error or oversight in the ALJ's
decision that would require remand.  The ALJ's decision is supported by substantial evidence
and, accordingly, will be affirmed.

        The Court reviews the ALJ's decision—which is the agency's final decision pursuant to
20 C.F.R. § 416.1481—to ensure that findings of fact are supported by substantial evidence and

that there are no legal errors. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (citation omitted). The Court determines whether an ALJ's decision is supported by substantial evidence by looking at the ALJ's decision "as a whole." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

A child under eighteen will be found to be disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *T.C. ex rel. Z.C. v. Comm'r of Soc. Sec.*, 497 Fed. Appx. 158, 160 (3d Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)). An ALJ's evaluation of such disability proceeds in three steps wherein an ALJ must find: "(1) that the child is not working; (2) that the child had a 'severe' impairment or combination of impairments; and (3) that the impairment, or combination of impairments, was of Listing-level severity, meaning the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the Listings." *Id.* (citing 20 C.F.R. § 416.924(a)). Considering whether impairment(s) are functionally equivalent to "the severity of an impairment in the Listings," ALJs look at the claimant's "domains of functioning." *Id.* (citing 20 C.F.R. § 416.926a). There are six such domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." *Id.* at 160—61 (citing § 416.926a(b)(1)). A marked limitation in two domains or an extreme limitation in one establishes functional equivalency. *Id.* at 160 (citing 20 C.F.R. § 416.926a(a)).

In this matter, the ALJ found that the claimant had "less than a marked limitation" in all but one domain. (R. 740—41). He found a marked limitation in the domain of attending and completing tasks. (R. 740). Plaintiff argues that the ALJ should have found a second marked limitation in the domain of acquiring and using information, suggests there may have also been a marked limitation in interacting and relating with others, and contends that the ALJ should have found an extreme limitation in attending and completing tasks. Plaintiff attributes the ALJ's inaccurate findings to his "fail[ure] to properly evaluate [the claimant's] functioning outside of structured support setting, particularly in the domain of acquiring and using information." (Doc. No. 25-1, pg. 24). This consideration of "structured or supportive settings" is critical to an ALJ's consideration of functioning. *A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 520 (D.N.J. 2016) (citing 20 C.F.R. § 416.924a(b)(5)). A structured setting may be provided by "family members or other people" at home or in a "classroom at school." 20 C.F.R. § 416.924a(b)(5)(iv)(B). In a disability determination, the effect of a structured or supportive setting may give a false impression of the extent of a child's abilities and his/her limitations outside of a supportive environment. *A.B. on Behalf of Y.F.*, 166 F. Supp. 3d at 520; 20 C.F.R. § 416.924a(b)(5)(iv)(C). Accordingly, an ALJ must "identify[] the nature of [any] structured setting and the amount of help [the claimant] receives from it." *Id.* (citation omitted).

The Court is satisfied that the ALJ identified the claimant's structured settings and accounted for the help he received from them in his evaluation of the domains of functioning. Looking at the ALJ's decision "as a whole," *Jones*, 364 F.3d at 505, the ALJ recognized that he was required to "evaluate[] the 'whole child' . . . by considering how the claimant functions at home, at school, and in the community," as well as "the type, extent, and frequency of help the claimant needs." (R. 740). He explained that he would base his decision on "all of the relevant evidence," and that he would consider "how the claimant functions over time and in all settings (i.e., at home, at school, and in the community)." (*Id.*). Thus, the ALJ acknowledged the importance of taking structured settings into account in his decision.

Turning to the specifics of the claimant's structured settings, the ALJ discussed—at length—the claimant's Individualized Education Plan ("IEP") and reevaluations over the years. (R. 741—45). The ALJ noted significant improvement between 2014 and 2016, but further recognized continued need for support and difficulties such as "los[ing] focus and not retain[ing] information that was being presented." (R. 743). In 2019 the claimant continued to receive significant support at school, including "itinerant learning support coupled with speech and language therapy;" special-education services for "learning disability in the areas of reading, writing, and mathematics, with a need for specially designed instructions;" "accommodations including a small group setting, read aloud directions, a cueing system for on task behavior, extended time, frequent breaks, and read aloud of some allowable items at his request;" and 300 weekly minutes of pull-out learning support. (R. 744). His mother provided support for the claimant's homework and administered medication to "assist with focus." (R. 741). Summarizing this evidence, the ALJ observed that the claimant's ADHD was "largely controlled" and that he had "made progress with IEP-related goals." (R. 745). Based on the IEP and other evidence the ALJ found the claimant had less than a marked limitation in the domain of acquiring and using information. (R. 747).

Plaintiff argues that the ALJ's finding in this domain does not include an adequate explanation for his rejection of evidence that supported a more severe limitation. For instance, Plaintiff points to the claimant's special education teacher's finding that the claimant had, *inter alia*, "a very serious problem" reading and comprehending written material and "a serious problem" learning new materials. (Doc. No. 25-1, pgs. 16—17 (citing R. 276)). Plaintiff also argues the ALJ overlooked the claimant's IEP reports and faults the ALJ for relying on the State agency medical consultant's findings in support of his less-than-marked finding in this domain. She further argues the ALJ relied on evidence that the claimant could do age-appropriate chores and socialize despite more compelling contrary evidence. Such contrary evidence would include that the claimant received an "F" grade in English Language Arts ("ELA"), a "D" grade in science, and a "D" grade in PE in the 2019—20 academic year despite his significant supports at school and at home with his mother. (R. 988).

Despite these arguments, the Court finds that the ALJ adequately supported his finding for the domain of acquiring and using information and therein accounted for the nature of claimant's structured setting/the help he received. The ALJ identified and described the help the

claimant received in school and acknowledged that the claimant continued to have limitations even with that support. (R. 748). Among those limitations, the claimant "demonstrated some difficulty in recalling and using previously learned material, and in completing assignments in a timely fashion." (R. 747). Reviewing the claimant's academic performance from 2016 to 2020, the ALJ noted that despite receiving mostly A and B grades from 2016 to 2018, the claimant had received lower grades from 2019 to 2020 including the failing language arts grade and Ds in science and PE. (R. 745). Overall, however, the ALJ found that the claimant's school records showed he was "earning good grades within his educational placement" without being "held back or required to repeat a grade." (R. 747). This, the claimant's ability to "perform age-appropriate chores" with some prompting, and his ability to "engage with friends, including learning new games and spending time in the park," were all cited in support of a less-than-marked limitation. (R. 748).

This explanation for the finding wherein the ALJ accounted for the claimant's functioning with and without structed settings is an adequate explanation for how the ALJ weighed the evidence. The ALJ did not overlook the claimant's failing ELA grade, and while "not reading, writing, or doing arithmetic at appropriate grade level" is indicative of limitation, it is not "necessarily" indicative of "a 'marked' or an 'extreme' limitation." SSR 09-3p, 2009 WL 396025, at *6 (S.S.A. Feb. 17, 2009). The ALJ also adequately explained his partial rejection of Ms. Chen's findings, giving them only partial weight because they were "consistent with her treatment of the claimant in 2015" but not "reflective of the longitudinal record." (R. 750—51). Further, there was no error in the ALJ's reliance on the State agency medical consultant findings. Though Plaintiff argues the consultant lacked access to the longitudinal records, the consultant's findings remained relevant and ALJs must consider all relevant evidence. *Adorno*, 40 F.3d at 48. The ALJ cited these findings in support of the less-than-marked limitation in the acquiring and using information domain, but he did not afford them outsized importance. Rather, he let his own review of the longitudinal evidence inform his finding and added that his review of the record was "also supported by the findings of the State agency medical consultant." (R. 748). The same is true of the ALJ's consideration of the claimant's ability to do age-appropriate chores and socialize. If the Court were to fault the ALJ for relying on this evidence, it would effectively be dictating to the ALJ how to weigh the evidence in this matter. Accordingly, the Court finds no error in the ALJ's finding for the domain of acquiring and using information.

The Court next addresses Plaintiff's argument that the ALJ failed to account for the claimant's language difficulties pursuant to SSR 09-5P which addresses functional equivalence for the domain of interacting and relating with others. 2009 WL 396026 (S.S.A. Feb. 17, 2009). The ruling explains that being able to interact and relate with others requires clear speaking, understanding "pragmatics" (*i.e.*, verbal and non-verbal social cues in conversation), and comprehension. *Id.* at *3—4. The Court finds no deficit in the ALJ's evaluation of the interacting and relating with others domain. The ALJ explained that the claimant was "able to spend independent time with friends, including playing hockey and baseball in the park" despite his articulation disorder. (R. 748). Consistently, the claimant's "IEP and reevaluation report describe[d] him as having no difficulty interacting with others or having discipline issues" that

4

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment

(Doc. No. 25) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 27) is

GRANTED as specified above.

s/ Alan N. Bloch<br>
United States District Judge

ecf:    Counsel of Record

---

were significant.  (*Id.*).  Further, at a prior hearing, the claimant himself had confirmed that he was able to maintain social relationships with peers.  (R. 749).  Thus, despite evidence of the claimant's language difficulties, *e.g.*, his failing ELA grade, the Court finds the ALJ adequately supported his finding of a less-than-marked limitation in interacting and relating with others.

Finally, the Court addresses Plaintiff's argument that the ALJ should have found an extreme limitation in the domain of attending and completing tasks.  In support of this argument, Plaintiff points to Ms. Chen's finding that the claimant had "a very serious problem" in, *e.g.*, carrying out multi-step instructions, which—with the claimant's 2020 IEP—should have supported an extreme limitation in this domain.  (Doc. No. 25-1, pg. 23).  However, the Court finds the ALJ's marked limitation finding for the domain of attending and completing tasks is well supported.  In support of this finding, the ALJ explained how he reconciled evidence that the claimant struggled to begin work without prompting and had difficulty completing tasks with evidence that "until the last school year," the claimant had generally received As and Bs in school.  (R. 748).  Further, this Court has already found that the ALJ adequately explained his partial rejection of Ms. Chen's findings.  The ALJ not having overlooked evidence that might have supported an extreme limitation in this domain, Plaintiff's argument is reducible to a request to reweigh the evidence.  For this and the foregoing reasons, the Court will affirm the underlying decision.